Robert E. White, J.
This is an article 78 proceeding by Genesee Valley Medical Care, Inc. ("GVMC”) to invalidate the decision of the State Insurance Department ("Department”), which denied in part the application of GVMC, filed June 27, 1975, for a rate increase. The partial denial of the application was premised on a determination by the Department that certain payments made by GVMC during the years 1972 through 1975 were illegal, as violative of the Medicare Act (US Code, tit 42, §§ 1395-1395pp). The Department ordered that GVMC cease making these payments and recover such sums already expended as quickly and efficiently as possible.
GVMC is a not-for-profit, membership corporation which offers a plan of medipal expense indemnity insurance known as Blue Shield. In addition, GVMC contracts with the Secretary of the United States Department of Health, Education, and Welfare to administer within a six-county region part B of the Medicare Act, known as Supplementary Medical Insurance Benefits for Aged and Disabled. The members of the corporation are the physicians in the service area of the petitioner. Pursuant to its contract with the Secretary as a Medicare carrier, GVMC pays physicians for services rendered to patients who qualify for benefits under the act. GVMC operates through a board of directors consisting of medical professionals and members of the community.
This plan of insurance provides compensation for professional medical services rendered to its subscribers by member physicians. The plan is authorized and regulated by the State Insurance Department.
*526 In joining the plan, physicians agree to accept the rates set by GVMC — and these fees are set by the board of directors of Blue Shield.
The State Insurance Department does have a broad range of regulatory power over GVMC, but admittedly not in establishing the amount of fees to be charged. GVMC has no other income except premiums.
When Congress enacted Medicare (US Code, tit 42 §§ 1395-1395pp), administration of the program was given to the Social Security Administration (hereinafter "SSA”) of the Department of Health, Education and Welfare (hereinafter "HEW”). This agency operates in turn through appointed contractual insurance agents, called "Medicare carriers” throughout the United States. Petitioner is such an agent for Medicare. This gives GVMC the authority to operate the entire Medicare program through the six-county service area.
This designation has had one important advantage to GVMC subscribers over 65, covered by Medicare. Medicare itself calls for a number of deductions and percentage exclusions from coverage providing less than full payment for medical expenses. In some cases, there is both a deductible and a percentage exclusion of the total amount. GVMC has designed a Blue Shield contract for persons eligible for Medicare offering coverage for the deductible and excluded amounts at premiums which are substantially below normal Blue Shield premiums. This is called "complementary coverage”.
The payments at issue in this lawsuit were for services rendered to Medicare patients who had made assignments of their benefits to their physicians. The Medicare Act (§ 1395u, subd [b], par [3], cl [B]) expressly states that the carrier "will take such action as may be necessary to assure that, where payment under this part for a service is on a charge basis, such charge will be reasonable * * * and such payment will * * * be made (i) on the basis of an itemized bill; or (ii) on the basis of an assignment under the terms of which (I) the reasonable charge is the full charge for the service”.
In billing Medicare patients, the physician has the option of rendering a bill for services directly to the Medicare patient, and thereafter the patient is reimbursed by Blue Shield, or the physician may require a Medicare patient to sign an assignment form whereby the patient assigns his Medicare benefits to the physician and thereafter the physician bills *527 Blue Shield for the entire surgical or medical procedure. Using this assignment form, Blue Shield has been paying the physician the Medicare benefit, and where the patient has "complementary coverage”, Blue Shield has been paying the difference between the charge and the Blue Shield charge fixed by the board of directors.
The statute provides that where an assignment is accepted, the physician "may not receive payments from the insurance carrier which exceed the reasonable charge for the service performed” and "an insurance carrier administering the Medicare plan * * * (must) assure that the payments made to participating physicians will be only for the reasonable charge”.
It appears that most of the physicians in the subject area use the assignment method for payment. Whenever Medicare patients have this coverage, GVMC pays physicians the "Blue Shield” rate charge; but, if a Medicare patient is without complementary coverage, then GVMC pays the physicians the "reasonable charge”.
The SSA has specifically disapproved GVMC’s practice of payments at the Blue Shield rate where physicians have accepted assignments.
In June, 1975, petitioner made application for an increase in premiums pursuant to regulations of the State Insurance Department, primarily to permit an increase in physicians’ charges and to bring GVMC up to its statutory reserve position. Section 256 of the Insurance Law mandates that where a IX-C corporation (Insurance Law, art IX-C) reduces its reserve of 5% with the approval of the Superintendent of Insurance, it is required thereafter to bring it back to the 5% ceiling.
In its decision, dated July 28, 1975, the Superintendent of Insurance reduced the Blue Shield request for an increase by 20%, and criticized the payment by GVMC of Blue Shield benefits to physicians who accepted Medicare assignment forms. The criticism, in brief, was that Blue Shield was paying more than "the reasonable charge” required to be charged by Medicare in the utilization of the assignment payment method. The decision ordered all "overpayments” to be discontinued and that amounts previously paid be recovered from physicians.
GVMC contends that the decision of the superintendent is arbitrary, illegal and unreasonable in four respects:
*528 (1) It forces GVMC below the legal reserve limit provided by statute.
(2) The $700,000 figure is arbitrary and unsupported by the facts.
(3) The interpretation of the Social Security Administration rules is unreasonable, and
(4) The action of the State Insurance Department is without due process of law in that any construction of a regulation should be upon a regulatory hearing and not upon a hearing for an increase in insurance premiums.
The court has determined that the $700,000 figure has been reasonably established, is not arbitrary and is supported by the facts, as set forth by the memorandum of the principal life actuary for the Insurance Department. This is further buttressed by the information set forth by letter dated February 13, 1976, from Leo Morgillo to attorney Paul Harrison.
The contention that the decision of the superintendent forces GVMC below its legal reserve limit is without merit inasmuch as it presupposes that the $700,000 and additional overpayments would not be returned to the fund.
The Medicare Act provides that GVMC may not pay more than the "reasonable charge” where physicians have accepted assignments. GVMC’s contention that it has the power unilaterally to set the "reasonable charge” is without merit. The phrase "reasonable charge” is a term controlled by statute. The Medicare Act (US Code, tit 42, § 1395u, subd [b], par [3]) states: "No charge may be determined to be reasonable in the case of bills submitted or requests for payment made under this part after December 31, 1970, if it exceeds the higher of (i) the prevailing charge recognized by the carrier and found acceptable by the Secretary for similar services in the same locality in administering this part on December 31, 1970; or (ii) the prevailing charge level that, on the basis of statistical data and methodology acceptable to the Secretary, would cover 75 percent of the customary charges made for similar services in the same locality during the last preceding calendar year elapsing prior to the start of the fiscal year in which the bill is submitted or the request for payment is made. In the case of physician services the prevailing charge level determined for purposes of clause (ii) of the preceding sentence for any fiscal year beginning after June 30, 1973, may not exceed (in the aggregate) the level determined under such clause for the fiscal year ending June 30, 1973, except to the *529 extent that the Secretary finds, on the basis of appropriate economic index data, that such higher level is justified by economic changes.”
Therefore, for any fiscal year before June 30, 1973, the "reasonable charge” could not exceed the charge being administered by GVMC on December 31, 1970. However, the Blue Shield rate starting on October 1, 1972 was above the latter charge, since on that date GVMC raised its rates. For any fiscal year after June 30, 1973, the "reasonable charge” could "not exceed the prevailing charge level determined for the fiscal year ending June 30, 1973” "except to the extent that the Secretary finds * * * that such higher level is justified”.
On October 1, 1972, the Blue Shield rates did not meet the statutory requirements for "reasonable charges”. These were above the charges being administered on December 31, 1970, and more importantly, they were not found by the Secretary to be justified as required by the statute. In fact, the Secretary has specifically determined that the Blue Shield rates are not "reasonable charges” and has demanded that GVMC discontinue its practice of paying Blue Shield charges where physicians have accepted assignments.
The superintendent has accepted the Medicare fee schedule and has rejected the schedule as established by GVMC as to the rate paid to physicians who accepted assignments. It is not within the province of the court to second-guess the wisdom of what an administrative agency has done, nor to reform the procedures and methods used by that agency. (Matter of Procaccino v Stewart, 32 AD2d 486.)
The court finds that the superintendent has acted within the standards of acceptability in its determination as to "reasonable charge”.
It appears that, in the circumstances, the superintendent did all that could be reasonably expected to do by way of assembling information and then acting rationally upon it in accordance with law.
The court also rejects petitioner’s contention that construction of a regulation should not be passed upon in a hearing for an increase in insurance premiums. The decision of the superintendent in regulating rate increases necessarily requires interpretations and applications of appropriate statutes. This court in this proceeding can accept or reject any interpretation if it is arbitrary, capricious, or an abuse of discretion and no separate departmental hearing need be before the court.
*530 The relief sought by petitioner is denied.